UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SHAWN DARNELL CHEATHAM,

                                    Plaintiff,

              v.                                          Action No. 3:09–CV–649

GENE M. JOHNSON, et al.,

                                    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Motions to Dismiss filed individually by

Defendants Gene Johnson (Dock. No. 8), Jack Lee (Dock. No. 18), and Michael Manning

(Dock. No. 4).  In the alternative, Defendants Lee and Manning have also filed Motions for

Summary Judgment (Dock. Nos. 6, 20).  For the reasons stated below, the Court DENIES

Johnson's Motion and GRANTS Lee's and Manning's Motions for Summary Judgment.

## I. BACKGROUND

This case arises out of allegations of constitutional violations and false

imprisonment in connection with Plaintiff Shawn Darnell Cheatham's period of

incarceration in various penal institutions in the Commonwealth of Virginia.  Defendant

Gene M. Johnson is the director of the Virginia Department of Corrections ("DOC").

Defendant Jack Lee is the superintendent of the Middle River Regional Jail, located in

Staunton, Virginia.  Defendant Captain Michael Manning is the assistant division

commander for confinement at the Loudoun County Office of the Sheriff and is responsible

for the Loudoun County Adult Detention Center, located in Leesburg, Virginia.  The

Complaint also names numerous John Doe defendants, which encompass personnel of the Department of Corrections, Middle River Regional Jail, or Loudoun County Adult Detention Center that were responsible for Cheatham's imprisonment allegedly beyond that authorized by law.

In 1997, the Loudoun County Circuit Court sentenced Cheatham to fifteen years in prison, with all but three years, eight months suspended, conditioned on compliance with the terms of his release.[1] In October 2003 and May 2004, the Loudoun County Circuit Court held probation violation hearings in connection with that sentence.

On March 3, 2005, Cheatham states that he was released because he had successfully completed the Detention and Diversion Center Programs as required by the Loudoun County Circuit Court.

In November of 2006, Cheatham was arrested and on the thirteenth of that month, he appeared before the Loudoun County Circuit Court, which concluded that he was in violation of his probation and imposed the previously suspended sentence. Cheatham remained incarcerated, but the court stayed his delivery to the DOC pending further review by the court.

In April 2007, the Loudoun County Circuit Court further reviewed Cheatham's violations and re-suspended all but one year on each of the three cases for a total active sentence of three years. The April 11, 2007 Order stated

that in the event the Virginia Department of Corrections deems the defendant eligible and acceptable for enrollment in the Detention Center

---

[1] These facts are taken from Cheatham's Complaint and are assumed true for purposes of the Motions to Dismiss. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

Incarceration Programs and the Diversion Center Incarceration Program, so much of his three (3) year active period of confinement therewith imposed in these cases will be suspended upon his transport to said programs and upon his successful completion of said programs and of the term of probation.

On August 11, 2008, the Virginia DOC transferred Cheatham from Greensville Correctional Center to Coffeewood Correctional Center and then to the White Post Center Detention Program. Asserting that he had already served his sentence, Cheatham declined to participate in the Detention Center Program. Some time thereafter the DOC transferred Cheatham back to the Loudoun County Adult Detention Center. The DOC subsequently transferred him to the Middle River Regional Jail. Cheatham alleges that he continued to advise all appropriate authorities that he was being held unlawfully. He reports that Middle River Regional Jail authorities told him that they could not release him because he was a DOC Prisoner.

On August 27, 2008, the Loudoun County Circuit Court ordered that Cheatham "serve the three (3) year [sic] previously imposed for the violation with credit given for time served since his incarceration on June 6, 2006 for the offenses accrued in the City of Charlottesville and upon the instant show cause."

In December 2008, Cheatham filed a petition for writ of habeas corpus in the Loudoun County Circuit Court. In February 2009, the Loudoun County Circuit Court found that "the Department of Corrections has erroneously interpreted this Court's Order as imposing an additional three (3) year sentence commencing on August 27, 2008." The court determined that Cheatham had "already served, in its entirety the three year sentence this Court imposed April 9, 2007 (and affirmed August 27, 2008)" and "is being

held in custody incorrectly."  The court ordered that Cheatham be released and the Defendants complied.

As a result of these events, Cheatham states that "[o]n the three-year sentence of incarceration authorized by the Loudoun County Circuit Court's order dated April 11, 2007, the Defendants imprisoned Mr. Cheatham for 1142 days, approximately seven months longer than the 931 days (counting good time) authorized by law."  (Compl. ¶ 23.) As required by Virginia Code § 8.01-195.6, Cheatham notified the Commonwealth of Virginia of his claim on May 31, 2009.  And in October 2009, Cheatham filed his three count Complaint, alleging that the Defendants deprived him of his due process rights in violation of the Fourteenth Amendment of the United States Constitution (Count 1), inflicted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments (Count 2), and falsely imprisoned him in violation of state law (Count 3). The Complaint seeks $100,000 in damages for the approximately seven months that Cheatham alleges he was unlawfully detained.  He also seeks attorney's fees and costs under 42 U.S.C. § 1988.  In response, the Defendants have now filed the present motions.

## II.  STANDARDS OF REVIEW

### A. Motion to Dismiss

Rule 8 of the Federal Rules of Civil Procedure requires a complaint stating a claim for relief to contain a short plain statement of the claim that gives the defendant fair notice of what the claim is and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Defendants police this requirement using Rule 12(b)(6), which permits a party to test the legal sufficiency of a complaint.

<u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  A 12(b)(6) motion does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  <u>Id.</u>  As a result, in resolving a 12(b)(6) motion, a court must regard all of plaintiff's well-pleaded allegations as true, <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proved consistent with those allegations, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In contrast, the court does not have to accept legal conclusions couched as factual allegations, <u>Twombly</u>, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," <u>E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).  With these principles in mind, the court must ultimately ascertain whether the plaintiff has stated a "plausible, not merely speculative, claim for relief."  <u>Twombly</u>, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Iqbal</u>, 129 S. Ct. at 1950.  While Rule 8(a)(2) requires a showing, not simply a blanket assertion of "entitlement to relief," the plaintiff is not required to show that it is likely to obtain relief.  <u>Twombly</u>, 550 U.S. at 556 n.3; <u>Iqbal</u>, 129 S. Ct. at 1949.  In the end, if the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff should be given the opportunity to prove that claim.  <u>Twombly</u>, 550 U.S. at 563 n.8.

### B. Summary Judgment

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where no genuine issue of material fact exists, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). Mere unsupported speculation is not sufficient if the undisputed evidence indicates the other party should win as a matter of law. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## III. DISCUSSION

### A.  Gene Johnson's Motion to Dismiss

### 1. Due Process Violation (Count 1)

Defendant Johnson seeks dismissal of Cheatham's due process claim on several grounds. Claiming that there was legal authorization to confine Cheatham until the Loudoun County Circuit Court ordered Cheatham released, Johnson states that Cheatham has not alleged facts upon which relief can be granted. Cheatham was also provided a

process to challenge any detention, so, Johnson observes, any claim of a procedural due process violation must fail.   Johnson further reasons that any facts Cheatham has presented would rise only to the level of mere negligence, which is insufficient to state a cause of action under § 1983.

Cheatham's due process claim is premised on Johnson's failure to provide adequate pre-deprivation process to ensure that Cheatham was not incarcerated unlawfully. Cheatham's complaint does not appear to make a substantive due process claim.

The Due Process Clause[2] applies when government action deprives an individual of a legitimate liberty or property interest.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972).  The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest.  See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).  Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or [they] may arise from an expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted).  Here, the Constitution guarantees  a liberty interest—absent due process, a department of corrections official cannot imprison an inmate longer than he was sentenced by the sentencing court.  See McNeill v. Dir., Patuxent Inst., 407 U.S. 245, 249-52 (1972).

Once a liberty interest is established, the second step in a procedural due process analysis at this stage in the proceedings is to evaluate whether Cheatham has alleged facts

---

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

to support the claim that the process Johnson provided Cheatham was constitutionally inadequate.  See  Wilkinson v. Austin, 545 U.S. 209, 224 (2005).  The adequacy of the procedures in place is assessed by balancing three factors: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation through the procedures used and the probable value, if any, of alternative or additional procedures; and (3) the state's interest, including the function involved and the fiscal and administrative burdens of added safeguards.  Id.  (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  This third factor encompasses the state's interest in prison management, particularly in allocating scarce resources and in maintaining order, security, and discipline.  See id. at 227; see also Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (recognizing that there must be "mutual accommodation" between institutional needs and inmates' constitutional protections). Additionally, to establish liability under § 1983, Cheatham must show that the defendants acted intentionally in depriving him of his protected interest.  Because the protections of the Due Process Clause are not triggered by the "mere failure to take reasonable care," negligent deprivations are not actionable under § 1983.  Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995); see also Daniels v. Williams, 474 U.S. 327, 330-31 (1986).

Although Cheatham does not give an exact date when he says he first should have been provided a hearing, it is clear that he alleges he was held beyond his original sentence without first being afforded a hearing on the propriety of that action.  When an individual's personal liberty is at stake and there are no other countervailing considerations, due process requires at a minimum a pre-deprivation hearing because once the due process clause has been violated, a deprivation of liberty has occurred.  See,

e.g., <u>Zinermon v. Burch</u>, 494 U.S. 113, 131 (1990) (concluding that detention without hearing to determine propriety of detention "clearly infringes" on an individual's liberty interest); <u>see also</u> <u>Grannis v. Ordean</u>, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."). Here, Cheatham alleges that he was held—without a prior hearing—by the DOC until the Loudoun County Circuit Court ordered him released.

But, Johnson says, even if that is the case, the lack of a hearing was the result of mere negligence, which cannot be the basis of a § 1983 suit. That much is true: Cheatham must allege that his alleged unlawful detention was not merely the result of negligence, but was a purposeful decision by Johnson. And indeed, here, Cheatham alleges that Johnson acted intentionally by "authorizing a state process that deprived Mr. Cheatham of liberty without constitutionally adequate safeguards to protect against unauthorized incarceration." (Compl. ¶ 29.) An official who deprives a person of liberty by deliberately establishing state procedures that are later held to be constitutionally inadequate can be held liable for due process violations. <u>See, e.g.</u>, <u>Sample v. Diecks</u>, 885 F.2d 1099, 1114 (3d Cir. 1989). Whether or not these allegations will ring true is not the question on a motion to dismiss; instead the question is whether the bell has been rung at all. And as to that question, the answer is yes. Thus, the Motion as to Count 1 is DENIED.

## 2.  Eighth Amendment Violation (Count 2)

Johnson begins by articulating that the standard for an Eighth Amendment violation is whether the conditions or punishment denies the minimal necessities of life as measured by civilized society or a prison official acts intentionally or with a deliberate

indifference in the face of risks to the prisoner's health or safety. The Complaint, Johnson contends, does not allege facts to suggest that Cheatham's prison conditions were anything other than ordinary prison conditions or that Cheatham faced risks to his health or safety while incarcerated.

Incarceration beyond the termination of one's sentence may state a claim under the Eighth Amendment. <u>Golson v. Dep't of Corr.</u>, 914 F.2d 1491, 1990 WL 141470, at *1 (4th Cir. 1990). To prevail on that theory, a plaintiff must demonstrate that the defendant acted with deliberate indifference. <u>Id.</u> (citing <u>Sample</u>, 885 F.2d at 1110). The Complaint merely states the legal conclusion that Johnson "knew that Mr. Cheatham's sentence was over, but failed to correct the problem by releasing him or taking other corrective action." (Compl. ¶ 35.) Besides this statement, the Complaint is silent on how or when Johnson knew these details. It is well settled, however, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1949. Cheatham's allegations are simply sterile legal conclusions that "are not entitled to the assumption of truth." <u>Id.</u> at 1950. At oral argument, Cheatham's counsel conceded to these deficiencies. As a result, the Motion as to Count 2 is GRANTED.

### 3. False Imprisonment (Count 3)

Johnson asserts that because there was "adequate legal justification" for Cheatham's confinement until he was ordered released by a court, Cheatham was lawfully incarcerated and therefore cannot establish a false imprisonment claim.

In Virginia, the tort of false imprisonment is defined as "the direct restraint by one person of the physical liberty of another without adequate legal justification." <u>Jordan v.</u>

Shands, 500 S.E.2d 215, 218 (Va. 1998) (internal citation and quotation marks omitted). The Complaint alleges that Johnson extended Cheatham's imprisonment without legal justification. The Motion to Dismiss as to Count 3 is DENIED.

### B.  Jack Lee's and Michael Manning's Motions to Dismiss or in the Alternative Motions for Summary Judgment

Defendant Jack Lee, Superintendent of the Middle River Regional Jail, and Defendant Michael Manning, assistant division commander for confinement at the Loudoun County Office of the Sheriff, have each filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment.  Lee and Manning assert that the complaint should be dismissed in its entirety because Cheatham cannot establish that Lee, Manning, or any of their employees had the authority to compute the actual time that could have or should have been served by Cheatham and no authority to release Cheatham unless ordered to do so by the DOC or a court.[3]  Even accepting the DOC record provided by Cheatham, he cannot escape the fact that neither Lee nor Manning had the ability to compute Cheatham's sentence or release him prior to the Loudoun County Circuit Court's order.  Cheatham's sentence was for three years and, thus, under Virginia law, Cheatham's fate was in the hands of the DOC.  Va. Code § 53.1-20(B) ("Persons convicted of felonies committed on or after January 1, 1995 . . . sentenced to confinement in jail for a year or more shall be placed in the custody of the [DOC] . . . .").  DOC prisoners are routinely

---

[3]  The Motions for Summary Judgment are supported by an affidavit from each Defendant stating that the sole authority to calculate Cheatham's sentence rested with the Department of Corrections.  Lee and Manning also state that neither they nor their employees had the ability to release Cheatham absent a directive from the Department of Corrections or a court order.

physically kept in local and regional jails, however, the exact length and calculation of those prisoners' sentences remains in DOC's control. Cheatham experienced that very reality. Thus, because Lee and Manning never had the ability to control Cheatham's sentence, their Motions for Summary Judgment as to all three claims are GRANTED.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Johnson's Motion to Dismiss and GRANTS Lee's and Manning's Motions for Summary Judgment. Lee's and Manning's Motions to Dismiss are DENIED as MOOT. An appropriate order will accompany this memorandum.

Let the Clerk send a copy of this memorandum to all counsel of record.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this _ 18th _ day of February 2010